UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ADVOCATING DISABILITY RIGHTS, INC.
a not-for-profit corporation, and EDUARDO
UMPIERRE,

          Plaintiffs,

vs.

                            Case No.: 05-1185 (ADC)

THE PUERTO RICO PORTS AUTHORITY a
public corporation created by law of the
Commonwealth of Puerto Rico; THE
MARITIME TRANSPORTATION
AUTHORITY OF PUERTO RICO, a public
corporation created by law of the
Commonwealth of Puerto Rico; THE
MARITIME TRANSPORTATION           **CONSENT DECREE**
AUTHORITY OF PUERTO RICO AND THE
MUNICIPAL ISLANDS, a public corporation
created by law of the Commonwealth of
Puerto Rico

          Defendants.
_____/

## INTRODUCTION

1.    Plaintiffs Advocating Disability Rights, Inc. a not-for-profit corporation ("ADR"), and

Eduardo Umpierre, initiated this action by a complaint filed under title II of the

Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation

Act of 1973 against the Defendants, THE PUERTO RICO PORTS AUTHORITY a

public corporation created by law of the Commonwealth of Puerto Rico ("PRPA"); THE

MARITIME TRANSPORTATION AUTHORITY OF PUERTO RICO, a public

corporation created by law of the Commonwealth of Puerto Rico ("MTA"); THE

MARITIME TRANSPORTATION AUTHORITY OF PUERTO RICO AND THE

MUNICIPAL ISLANDS, a public corporation created by law of the Commonwealth of Puerto Rico ("MTAPRMT") arising from Defendants' provision of designated public transportation in and around Puerto Rico using ferry vessels and related ferry terminals.

2.    Plaintiffs' allege that they suffered disability based discrimination in connection with the Defendants' ferry system.

3.    Section 202 of the ADA prohibits discrimination against the disabled by public entities[1]; § 504 of the Rehabilitation Act prohibits discrimination against the disabled by recipients of federal funding, including private organizations, 29 U.S.C. § 794(b)(3)[2]. Both provisions are enforceable through private causes of action. Section 203 of the ADA declares that the "remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides" for violations of § 202. 42 U.S.C. § 12133.

4.    Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available" for violations of § 504, as added, 92 Stat. 2983, 29 U.S.C. § 794a(a)(2). Thus,

---

[1] Section 202 provides:
[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
*ADA, § 202, 42 U.S.C. §12132.*

[2]        no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .
*Rehabilitation Act of 1973, § 504, 29 U.S.C. §794.*

the remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are

coextensive with the remedies available in a private cause of action brought under Title

VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits racial

discrimination in federally funded programs and activities.

5.      Defendants admit the following allegations in Plaintiffs' Second Amended Complaint[3]:

–      ADR is a disability rights advocacy group whose membership includes disabled
        citizens of Puerto Rico, including disabled individuals who use wheelchairs.
*Second Amended Complaint at ¶ 13.*

–      The principal purpose, mission, and objects of Advocating Disability Rights, Inc.,
        are twofold:
        FIRST on behalf of its members and the citizens of the United States, to advance
the interests of the disabled and to secure and to promote by education, equality of rights
and eradicate disability based prejudice and discrimination among; and to increase their
opportunities for securing justice in the courts; employment according to their ability; to
ensure their full participation in every community; to ensure that public spaces and
commercial premises are accessible to, and usable by, them; to ensure they are not
excluded from the enjoyment and use of benefits, services, programs, and activities of
public accommodations; and complete equality before the law; and

        Second to advocate on behalf of its members and the citizens of the United States
to end disability based discrimination, by invoking as Congress intended, the judicial
branch of our government as created by Article III of the Constitution of the United
States of America, under the sweep of congressional authority, including the power to
enforce the fourteenth amendment and to regulate commerce, in order to address the
major areas of discrimination faced day-to-day by people with disabilities in furtherance
of the purposes of the Rehabilitation act of 1973 and the Americans with Disabilities Act
of 1990, P.L. 101-336.
*Second Amended Complaint at ¶ 14.*

–      The interests that ADR seeks to protect in this action are germane to the
        organization's purpose.
*Second Amended Complaint at ¶  15*

–      ADR seeks to educate people, businesses, and governmental entities on
        accessibility issues and ensure full participation of all people with all types of

_____

[3] *See [44-1] Plaintiffs' Second Amended Complaint; [59-2] Defendants' Amended
Answer to Plaintiffs Second Amended Complaint.*

disabilities, in every community; to help end the isolation and segregation of disabled individuals from the mainstream of society that Congress found so pervasive in enacting the ADA; and to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities and to assist disabled individuals in competing on an equal basis to pursue those opportunities for which our free society is justifiably famous.

*Second Amended Complaint at* ¶ 16.

–    ADR operates a website in furtherance of ADR's mission to educate the public about, and in furtherance of, ADR's goals to eradicate disability based discrimination. <www.advocatingdisabilityrights.org>.

*Second Amended Complaint at* ¶ 17.

–    The Congress specifically provided that individuals with disabilities who have suffered "discrimination on the basis of disability in violation of section 202" of the ADA, may seek judicial intervention to avail themselves of the remedies, procedures, and rights guaranteed by the ADA and the Rehabilitation Act.  ADA § 203; Rehabilitation Act § 505, 29 U.S.C. § 794a, The Civil Rights Act of 1964 §§ 706(f) through (k), 717, 42 U.S.C. §§ 2000e-5(f) through (k), 2000e-16.

*Second Amended Complaint at* ¶ 18.

–    In furtherance of ADR's mission, Umpierre and ADR, on behalf of its members and all individuals with disabilities, have, with the blessing of the United States Congress,  initiated lawsuits in the United States District Court for the Commonwealth of Puerto Rico in response to wrongful disability based discrimination in order to avail themselves of the remedies, procedures, and rights guaranteed by the ADA and the Rehabilitation Act, and in order that all Puerto Ricans can be free from disability based discrimination.

*Second Amended Complaint at* ¶ 19.

–    ADR performs outreach and educational activities in furtherance of its mission.

*Second Amended Complaint at* ¶ 20.

–    Umpierre is a resident of Guaynabo, Puerto Rico and is other wise sui juris.

*Second Amended Complaint at* ¶ 22.

–    Due to the severity, extent, and duration of his functional limitations from a spinal cord injury resulting from a gunshot wound years ago, Umpierre must use a wheelchair for mobility and is substantially limited in several major life activities.

*Second Amended Complaint at* ¶ 23.

–    With respect to Defendants' ferry system, Umpierre is a qualified individual with disabilities, in that with reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, he meets the essential eligibility

requirements to be a passenger on Defendant's ferries.
*Second Amended Complaint at ¶ 24.*

   –    Umpierre is a director of ADR, a not-for-profit corporation, and the founding member of the Puerto Rico chapter.
*Second Amended Complaint at ¶ 25.*

   –    As a result of his physical disabilities, Umpierre depends on public transportation on a regular and continuing basis as the means by which he seeks integration into the mainstream of society.
*Second Amended Complaint at ¶ 26.*

   –    Umpierre has in the past used, and based solely on his disability been denied the benefits of, and been subjected to discrimination by, Defendants' ferry system. Were Umpierre to use Defendants' ferry system in the future, he would again suffer discrimination solely on the basis of disability in violation of ADA § 202, and Section 504.
*Second Amended Complaint at ¶ 27.*

   –    Defendant, PRPA is a public corporation created by law of the Commonwealth of Puerto Rico with the capacity to sue and be sued.
*Second Amended Complaint at ¶ 29.*

   –    Defendant, MTA is a public corporation created by law of the Commonwealth of Puerto Rico with the capacity to sue and be sued.
*Second Amended Complaint at ¶ 30.*

   –    Defendant MTAPRMT is a public corporation created by law of the Commonwealth of Puerto Rico with the capacity to sue and be sued.
*Second Amended Complaint at ¶ 31.*

   –    Defendants are public entities for purposes of title II and Section 504.
*Second Amended Complaint at ¶ 32.*

   –    Defendants own and operate the fixed route transportation system described in the Second Amended Complaint.
*Second Amended Complaint at ¶ 33.*

   –    Some or all of the shore side facilities described herein which are part of the ferry system, and which have subjected the plaintiffs to disability based discrimination in violation of ADA § 202 are located on the piers. By PRPA's own admission the piers are under the ownership and control of PRPA.
*Second Amended Complaint at ¶ 44.*

   –    Defendants' ferry system provides transportation for individuals between Vieques

Page -5-

and Fajardo and between Fajardo and Culebra and between Hato Rey, San Juan, and Catano under the name Acuaexpreso, and affects commerce.

*Second Amended Complaint at ¶ 46.*

–    Defendants' ferry system is program or activity that, at all times material hereto, received substantial federal financial assistance from the Department of Transportation ("DOT") and  Defendants have received substantial federal funding for capital projects  pursuant to various programs under Section 9 and/or 49 USC chapter 53, or other federal funding programs  and are thus subject to the prohibitions against disability based discrimination in Section 504.

*Second Amended Complaint at ¶ 47.*

–    Plaintiffs have suffered in the past and have a reasonable fear of suffering in the future, disability based discrimination by Defendants in violation of title II and Section 504, in that Plaintiffs have traveled on, and will again travel on Defendants' ferry system.

*Second Amended Complaint at ¶ 51.*

–    Umpierre was a passenger in 2004 and 2005 on Defendants' ferry system from/to Vieques, Fajardo, Culebra, Hato Rey, San Juan, and Cataño and suffered discrimination solely on the basis of his disability in violation of ADA § 202 and Section 504 due to the presence of architectural, communication, and transportation barriers at the shore side facilities, that render those facilities and because the ferries were not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

*Second Amended Complaint at ¶ 52.*

–    Plaintiffs have been subjected to prohibited disability based discrimination in connection with Defendants' ferry service as follows:

A.    Defendants do not effectively communicate information about accessibility of their facilities and vessels to Plaintiffs and other individuals with disabilities;

B.    Defendants have not developed and/or complied with their Transition Plan as required by Title II of the ADA and 28 C.F.R. Section 35.105.

C.    Disability Based Discrimination in Violation of §§ 202 and 222(a) of the ADA, and Section 504.  Defendants purchased, after August 26, 1990, vehicles for use in its ferry system that are not accessible to and usable by Umpierre and ADR's members with disabilities, including its members who use wheelchairs.

D.    Disability Based Discrimination in Violation of §§ 202 and 226 of the ADA, and Section 504:  Defendants have, after January 26, 1992, constructed, or placed into service, shoe side facilities that are not accessible to and usable by Umpierre and ADR's members with disabilities, including its members who use wheelchairs.

E.     Disability Based Discrimination in Violation of §§ 202 and 227(a) of the ADA, and Section 504:  Defendants have made, after January 26, 1992, alterations to shore side facilities that affect, or could affect  the usability of those facilities, and Defendants failed to make such alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by Umpierre and ADR's members who are qualified individuals with disabilities, including its members who use wheelchairs, upon the completion of such alterations.  In addition, because those altered stops contain areas of primary function, Defendants had an obligation to, and did not, undertake such alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area is readily accessible to and usable by Umpierre and ADR's members with disabilities, including its members who use wheelchairs.

F.     Disability Based Discrimination in Violation of § 202 of the ADA, and Section 504.  Defendants have selected sites for shore side facilities that have the effect of excluding and denying, by reason of their disabilities, Umpierre and ADR's members who are qualified individuals with disabilities, including its members who use wheelchairs, from enjoying the benefits of Defendant's ferry system services.

G.     Disability Based Discrimination in Violation of Section 504.  Defendants' ferry service, to the extent it uses facilities in existence on or before, at the latest, January 13, 1978, (the "existing facilities"), and its entire ferry service, that "when viewed in its/their entirety" is not readily accessible to and usable by Umpierre and ADR's members who are qualified individuals with disabilities, including its members who use wheelchairs.  See, 28 CFR § 41.57 (Department of Justice regulations implementing Executive Order 12250, implementing Section 504).

H.     Disability Based Discrimination in Violation of §§ 202 and 228(a)  of the ADA, and Section 504.  Defendants ferry service, to the extent it uses facilities in existence on or before, at the latest, January 26, 1992; and defendant's entire ferry service, "when viewed in its/their entirety" is not readily accessible to and usable by Umpierre AND ADR's members who are qualified individuals with disabilities, including its members who use wheelchairs.  See, 28 CFR § 41.57 (Department of Justice regulations implementing Executive Order 12250, implementing Section 504); 49 CFR § 37.61.

I.      Disability Based Discrimination in Violation of §§ 202 of the ADA, and Section 504.  Defendants have failed to effectively communicate with Umpierre and ADR's members who are qualified individuals with disabilities, including its members who use wheelchairs as to the existence and location of accessible and inaccessible ferry stops.  See, 28 CFR §§ 35.160 & 35.163(a).

J.      Disability Based Discrimination in Violation of Section 504. Contractual

arrangements and methods of administration between Defendants and third parties with respect to products and services supplied to and used in connection with the provision of the ferry service deny Umpierre and ADR's members who are qualified individuals with disabilities, including its members who use wheelchairs, the benefits of defendants' ferry service, and have the effect of subjecting them to discrimination on the basis of their disability.  See, 49 CFR §§ 27.7(b)(1) & (3)  (Department of Transportation regulations implementing Section 504).

*Second Amended Complaint at* ¶ 53.

–    Plaintiffs have suffered discrimination solely on the basis of disability in violation of ADA § 202 and Section 504 as a result of Defendants' failure to comply with the ADA Accessibility Guidelines for Transportation Buildings and Facilities ("ADAAG"), 49 C.F.R. pt. 37, App. A, as follows:

a.    Bathrooms at the facilities fail to comply with ADAAG §§ 4.13, 4.17, & 4.18.  For example, doorways lack the required clear width, toilet stalls lack the required clear floor space, and urinals, including their flush controls, are too high off the ground.

b.    Parking areas at the facilities fail to comply with ADAAG § 4.6.  For example, at the Fajardo terminal, Defendants provide no accessible access aisles or signage for Plaintiffs and other disabled patrons to safely maneuver.

c.    Boarding ramps to the ferry vessels at the facilities fail to comply with ADAAG § 4.8.  For example, ramps are too steep and fail to include handrails.  As a result, Umpierre has in the past and will in the future require the assistance of others to physically lift him, in his wheelchair, on board Defendants' vessels..

d.    There are no accessible routes identified from the ticketing counter to the ferry boarding terminal at the facilities in violation of ADAAG § 4.3..

e.    The ticketing counters at the facilities violate ADAAG §§ 7.1 & 4.30.  For example, ticketing counters are too high, there is no accessible ticketing counter for disabled patrons, and no signage has been installed to indicate alternative means by which disabled patrons may purchase tickets for passage on Defendants' ferries.

f.    There are no accessible locations for wheelchair users in the shore side assembly areas at the facilities in violation of ADAAG § 4.33.

*Second Amended Complaint at* ¶ 54.

–    Defendants' vessels are inaccessible because they:

A.    Do not provide adequate accessible means of embarkation and debarkation for

Plaintiffs and other individuals with disabilities;

B.    Lack adequate accessible routes for Plaintiffs and other individuals with disabilities;

C.    Contain architectural barriers, and communication barriers that are structural in nature, and transportation barriers in existing vehicles used by Defendants to transport individuals whose removal is readily achievable;

E.    Do not provide adequate designated seating locations for Plaintiffs and other individuals with disabilities; and

F.    Do not provide an adequate securement system to ensure that wheelchairs utilized by wheelchair riders remain secured.

*Second Amended Complaint at ¶ 55.*

–    The Defendants' discriminatory violations listed in the Second Amended Complaint are not an exclusive list of all barriers to access at Defendants' shore side facilities and on board Defendants' ferries. Plaintiffs require an expert inspection of Defendants' facilities and vessels pursuant to Rule 34 Fed.R.Civ.P. to determine the exact nature of all discriminatory barriers existing therein.

*Second Amended Complaint at ¶ 56.*

–    As a result of Defendants' violations of the nondiscriminatory provisions set forth above, Plaintiffs have, solely by reason of their disabilities, been excluded from participation in and have been denied the benefits of Defendants' services, programs, and activities, and have been subjected to discrimination by Defendants' ferry system.

*Second Amended Complaint at ¶ 57.*

–    Plaintiffs would like to again avail themselves of the goods and services offered by Defendants' ferry system, but as a result of their knowledge of the barriers at those facilities and vessels, have a real and credible fear that they will suffer further discrimination by Defendants and would not be able to without discrimination travel on Defendants' ferry system.

*Second Amended Complaint at ¶ 58.*

–    As a result of Defendants' violations of the nondiscriminatory provisions set forth in the Second Amended Complaint, Plaintiffs have, solely by reason of disability, been excluded from participation in and have been be denied the benefits of the Defendants' services, programs, and activities, and have been subjected to discrimination by Defendants' ferry service.

*Second Amended Complaint at ¶ 60.*

–    Defendants have engaged in conduct and acts of omission that subject Plaintiffs to

discrimination solely on the basis of their disabilities.
*Second Amended Complaint at ¶ 61*

– Plaintiffs intend to again utilize Defendants' ferry system, as well as to return to the properties and facilities owned, operated, and/or leased by Defendants and therefore will continue to suffer discrimination by Defendants in the future.
*Second Amended Complaint at ¶ 62.*

– Defendants have discriminated against Plaintiffs solely on the basis of disability in violation of Section 504.
*Second Amended Complaint at ¶ 67.*

– Plaintiffs intend to again utilize Defendants' ferry system, as well as to return to the properties and facilities owned, operated, and/or leased by Defendants and therefore will continue to suffer discrimination by Defendants in the future.
*Second Amended Complaint at ¶ 70.*

6.      In addition, Plaintiffs' allege in their Second Amended Complaint, that they have suffered discrimination due to Defendants':

a.      Failure to develop a transition plan setting forth the necessary steps for the removal of all structural barriers and physical obstacles to persons with disabilities in Defendants' transportation vehicles and facilities and to complete the necessary steps by the deadline established by the ADA, 28 C.F.R. § 35.150;

b.      Failure to develop a transition plan for the removal of physical barriers in Defendants' transportation vehicles and facilities, for completion within the deadline established by the ADA, 28 C.F.R. § 35.150;

c.      Failure to properly notify applicants, participants, beneficiaries, and other interested persons of their rights under the ADA and the Defendants' obligations under Title II, 28 C.F.R. § 35.106;

d.      Failure to provide necessary information to interested persons with disabilities concerning the existence and location of the Defendants' accessible services, activities, and facilities, 28 C.F.R. § 35.163(a);

e.      Failure to properly designate a responsible employee to coordinate its efforts to comply and to carry out the Defendants' ADA responsibilities, 28 C.F.R. § 35.107(a); 49 C.F.R. § 27.13.

f.      Failure to properly establish and publish a grievance procedure for resolving citizens' complaints regarding the Defendants' non-compliance with the ADA, 28 C.F.R. § 35.107(b); 49 C.F.R. § 27.13.

g.      Failure to operate the ferry with respect to existing facilities, so that, when viewed in the entirety, the program or activity is readily accessible to and usable by individuals with disabilities.  ADA § 228(a)(1).

h.      Failure to ensure that facilities and vehicles for which construction or alteration was begun after January 26, 1992, are readily accessible to and usable by people

> with disabilities, in accordance with all applicable ADA design standards, 49
> C.F.R. §§ 37.7, 37.9, 37.41, 37.43, 37.61.
>
> i.    Failure to ensure that communications with applicants, participants, and members
> of the public with disabilities are as effective as communications with others,
> including the failure to furnish auxiliary aids and services to persons with
> disabilities, when necessary, 28 C.F.R. § 35.160.

7.    Individuals with disabilities are precluded from full participation in and are denied the

benefits of Defendants' ferry services due to the Defendants' admitted failure to comply

with the requirements of title II of the ADA and Section 504 of the Rehabilitation Act.

8.    The Plaintiffs and the Defendants desire to resolve this action without the burden of

prolonged litigation in order that the Defendants may devote their resources to

eliminating disability discrimination in their ferry system through compliance with title II

of the ADA and Section 504 of the Rehabilitation Act.  The parties waive, for the

purposes of this Consent Decree only, a hearing and findings of fact and conclusions of

law on all issues raised by the Plaintiffs in their Second Amended Complaint.

It is therefore AGREED, ORDERED, ADJUDGED, AND DECREED as follows:

## PROGRAM ACCESSIBILITY AND BARRIER REMOVAL

9.    Defendants shall perform certain work to increase the accessibility and usability of their

ferry systems for persons with disabilities.  These projects include the removal of barriers

to accessibility on Defendants' ferry vessels and ferry terminals, the installation of

accessible elements, including accessible routes which connect accessible elements

within Defendants ferry terminal facilities, and accessible routes which connect elements

within Defendants ferry terminal facilities to sidewalks, physical alterations to existing

facilities, public sidewalks and roadways, the establishment of certain policies and

procedures that ensure proper information and materials are made available to persons

with disabilities in the provision of the Defendants' ferry services and activities, and the designation of staff to oversee and coordinate the Defendants' projects to comply with this Consent Decree and title II and Section 504.  All requirements of this Consent Decree are to be completed within sixty months unless specific deadlines are designated herein.

10.    Construction of new ferry vessels or physical alterations of existing ferry vessels shall comply with the December 2000 Report of the U.S. Access Board Passenger Vessel Access Advisory Committee (PVAAC Report), or, when adopted, regulations promulgated by the U.S. Department of Transportation.  All construction of new ferry vessels or physical alterations to existing ferry vessels performed in accordance with the PVAAC Report and prior to the adoption of regulations shall be considered acceptable and in compliance with this Consent Decree.

11.    Construction of new facilities or physical alteration of existing facilities shall be performed in compliance with the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG" standards) where applicable or as specifically identified in this Consent Decree.  49 C.F.R. § 39.9.

12.    Removal of structural barriers pursuant to 49 C.F.R. § 37.9, shall comply with ADAAG standards, unless compliance is technically infeasible, in which case the parties have agreed to departures from ADAAG standards and the use of alternative methods to provide equivalent accessibility, as identified in this Consent Decree.

13.    In alterations to facilities to remove structural barriers, if compliance with ADAAG standards is technically infeasible, the parties agree that such alterations shall still provide accessibility to the greatest extent feasible.  "Technically infeasible" means, with

respect to an alteration or barrier removal project, that the alteration has little likelihood

of being accomplished because existing structural conditions would require relocation or

significant alteration of a load-bearing member which is essential to the structural frame;

or the relocation of plumbing fixtures that would require the relocation of supply lines or

waste lines that are encased in a concrete slab.   In the event that Defendants claim

"technical infeasibility" as a basis for their inability to complete a barrier removal

project, Defendants shall provide a written notice to Plaintiffs in which it specifically

identifies the basis for the claim of  "technical infeasibility".

14.     The alterations, modifications, and barrier removal projects required by this Consent

Decree hereby shall be completed in all respects within the time frames specified in this

Consent Decree.  The time period for completion by the Defendants shall be subject to

acts of God,  *force majeure*, or events beyond the control of the Defendants such as the

inability to obtain construction permits, failure of building inspectors to complete

inspections, contractor defaults or work stoppages.  In the event of unforeseen

circumstances, to include acts of war, the time period for completion of the barrier

removal provided for hereby shall be extended by the number of days reasonably

attributable to such delay-causing event as long as the Defendants makes good faith

efforts to effect implementation as soon as reasonably possible thereafter in which event

Plaintiffs shall be notified.

### NON-STRUCTURAL ACTIONS TO BE PERFORMED

15.     Notification to the Public: The Defendants shall take affirmative steps to comply with the

notification requirements of the ADA, to increase the amount of information made

available to the public about the accessibility of the Defendants's ferry systems for

persons with disabilities, the provision of auxiliary aids and services to assist disabled persons, and the name(s) and location(s) of designated Defendants staff who are responsible for addressing the requests and complaints regarding accessibility of Defendants facilities, events, services, and programs.  The parties agree that the Defendants shall perform the following specific actions:

a.      Accessibility of Ferry Stops and Connecting Links:  The Defendants shall provide information to all interested persons about the accessibility of Defendants ferry stops in all published materials, including signage at ferry terminals.  This information shall:

   i.      identify accessible and inaccessible routes and elements within the boundary of each ferry terminal,

   ii.      Identify the accessible routes that connect public streets and sidewalks with the entrances at each ferry terminal.

**Deadline: 6 months.**

b.      Alternative Formats of Defendants Materials:  On all published materials that the Defendants makes available to the public regarding its ferry system, such as route maps, schedules, time tables, the Defendants shall include a statement that such materials can be provided in alternative formats for the blind or visually impaired, upon request.  The Defendants shall not impose any charge for the preparation of such materials. **Deadline: six months**

16.    ADA Grievance Procedures:  The Defendants shall adopt and publish procedures that provide prompt and equitable resolution of complaints made by the public concerning disability discrimination in Defendants' ferry system, including Defendants' failure to

provide reasonable accommodation or auxiliary aids and services; and Defendants'

failure to provide materials in alternative formats or to otherwise provide equally

effective communications to persons with disabilities.  The grievance procedures shall

provide that if a complaint is not able to be resolved, the matter shall be referred to the

Commonwealth Office of the Solicitor of Disabled persons ("Officina del Procurador del

Impedido", hereinafter "OPI").  Defendants' grievance procedures shall clearly designate

an office to investigate and respond to such complaints.  **Deadline: 6 months.**

17.     Designation of ADA Coordinator: The Defendants shall designate a knowledgeable and

properly trained staff person to serve as "ADA Coordinator" to coordinate its efforts to

comply with this Consent Decree and the general requirements of the ADA.  The

designated ADA Coordinator shall be responsible for the investigation and resolution of

any complaints alleging the Defendants' failure to provide accessibility to facilities or

programs.  The Defendants shall properly publish, and otherwise make readily available,

the name, office address, and telephone number of the Defendants ADA Coordinator.

The Defendants shall provide information regarding the duties of the Defendants ADA

Coordinator and the types of assistance provided to the public, on the Defendants'

website.  The designated ADA Coordinator shall have a published TTY telephone

number for communication with the hearing impaired.  The Defendants shall notify and

train all staff that regularly receive communications from the public to readily direct all

requests and/or complaints regarding disability access to the Defendants ADA

Coordinator.  The Defendants shall provide the name and contact information for this

designated employee to Plaintiffs' counsel.  This designated employee shall be

responsible for submitting to Plaintiffs' counsel the Interim Status Reports required by

this consent decree, for coordinating any inspections performed by Plaintiffs'

representatives, and notifying Plaintiffs' counsel of any anticipated or actual delays in

complying with the deadlines set forth in this Consent Decree. **Deadline:  90 days**.

18.     Communications:  The Defendants shall take appropriate steps to ensure that its

communications with individuals with disabilities, to include applicants, participants, and

members of the public, pertaining to their ferry systems are as effective as

communications with others.  Defendants shall perform the following actions:

  a.     TTY Telephone Service:  The Defendants shall ensure that all TTY numbers for

         Defendants offices are published in all Defendants' phone directories.  The

         Defendants shall ensure that the designated Defendants ADA Coordinator has a

         published TTY number.  **Deadline: 6 months.**

19.     Defendants Website - Accessibility and Usability: Defendants currently have no website.

However, if Defendants create a Website, Defendants will do so in a way which is

accessible and usable by persons with disabilities.  The website shall conform to the

accessibility guidelines provided by the U.S. Department of Justice for accessible website

design.  The Defendants shall ensure that where images are included on website pages,

including photos, graphics, scanned images, or image maps, the website design includes

"alt tags," long descriptions, and captions, as needed.  The Defendants shall ensure that

all online forms and tables comply with accessible website design guidelines.  The

Defendants shall ensure that all documents posted on its website are always made

available in HTML or a text-based format (even where such documents are also provided

in another format, such as Portable Document Format (PDF)).

20.     Ferry Terminal Design Standards and Guidelines.  The Defendants shall develop and

adopt mandatory design standards and guidelines for the construction, alteration, and administration of facilities used in the provision of Defendants' ferry system. The guidelines shall:

a.    govern the site selection, construction, alteration, and improvement of all aspects of ferry terminals used in the ferry system, regardless of location, and shall include standardized drawings which must be used. For occasions when the standard drawings do not work, there shall be provisions for modifying the standard designs to accommodate site specific conditions.

b.    be strictly enforced. If a ferry terminal is not constructed, altered, or improved in accordance with the standards, it shall not be eligible for inclusion in the system;

c.    contain oversight mechanisms to ensure compliance with the standards, and provisions that make clear that Defendants are ultimately responsible for the implementation and administration of the Design Standards and Guidelines.

**Deadline: 12 months.**

### BARRIER REMOVAL PROJECTS TO BE PERFORMED

21.    Federal Funding. The Defendants shall take all necessary steps to increase to $ 5 million per year, beginning FY 2008, amounts allocated to implementing this Consent Decree. These steps shall include amending the MPO transportation Improvement Program, Long Range Transportation Plan, as necessary.

22.    Accessibility of Ferry Vessels and Terminals. The Defendants shall make all modifications and alterations to existing ferry terminals and vessels necessary to correct all items of noncompliance identified in the reports attached hereto as Exhibit B, which includes defendants and plaintiffs' experts agreement as to the vessels and Exhibit C,

which is related to parties experts' agreement as to the ferry terminals.

23.  Defendants shall identify, prioritize, seek public comment, and perform necessary improvements and new construction to ferry terminals and vessels in order to increase accessibility by individuals with disabilities, by performing the following:

    a.  Public Comment.  The Defendants shall take appropriate actions to seek public comment on the location and priority of ferry terminals, sidewalk, intersection and accessible route locations that require improvements to provide wheelchair accessibility.  Within ninety (90) days of February 1, 2008, the Defendants shall publish at least two times at one week intervals in newspapers of general circulation, notices that invite interested persons to identify and request necessary improvements to the accessibility of its ferry systems, including ferry terminals and vessels, public sidewalks and intersections located within the area served by the Defendants' ferry system.  The Defendants shall include such locations within a prioritized list of sidewalk and intersection locations that require accessibility improvements.  If, with respect to sidewalks and intersections not within the Defendants' jurisdiction and control, the Defendants shall notify the governmental entity having jurisdiction and control.   The Defendants' notices to interested persons shall include the name, office location, and phone number of appropriate staff to receive public comments, and such notices shall be provided for a minimum of twenty-four (24) months from the date of this agreement.

    b.  Independent Self-Evaluation.   The Defendants shall perform a self-evaluation of all facilities and ferry vessels not inspected by Plaintiffs' experts, to identify improvements that increase accessibility for persons with disabilities. The

Defendants shall complete this self-evaluation within six months of the date of this agreement.

c.     Comments from Passengers:  As part of its self-evaluation to identify priority accessibility improvements, the Defendants shall seek comments and recommendations from the public.  The Defendants shall specifically seek commentary on the locations of accessible routes, connecting routes to sidewalks, sidewalk improvement, sidewalk installation, intersection curb cuts, to provide and/or increase wheelchair accessibility.

d.     Barrier Removal.  Except as otherwise provided herein, Defendants shall complete all repairs and new construction for all priority locations that do not provide wheelchair accessibility within sixty (60) months of the date of this Consent Decree.

e.     Defendants shall make all modifications to the ferry vessels identified in Exhibit B.  **Deadline:** The modifications to each vessel shall be made at the next dry dock, unless the dry dock is within 12 months of the effective date of this Consent Decree, in which case the modifications shall be made at the dry dock next immediately following.

f.     Defendants shall make all modifications to the ferry Terminals identified in Exhibit C.  **Deadline: Two years.**

g.     If a ferry terminal, sidewalk, intersection, or other element is not within the jurisdiction and control of the Defendants, it shall so notify the entity having such jurisdiction and control of the need to make alterations to increase accessibility.

24.   Ferry Terminals and Gangways.

a.    Defendants shall make all necessary modifications, improvements, and alterations, so that any qualified individual with a disability, including individuals who use wheel chairs, shall, without assistance, be able to travel to any ferry vessel from the closest public street, sidewalk, or bus stop. **Deadline: Two Years.**

b.    Any qualified individual with a disability, including individuals who use wheel chairs, shall, without assistance, be able to get on and get off any ferry vessel at any stop. **Deadline: Two years.**

c.    Ferry Terminals. Defendants shall make all necessary alterations to ensure that the required number of accessible parking spaces fully comply with dimensional, signage, and location requirements, in accordance with applicable design standards. The accessible parking spaces shall directly connect with an accessible route to an accessible entrance of the facility and to public transportation, streets and sidewalks. **Deadline: Two Years.**

d.    Accessible Route from Public Sidewalk to Ferry Terminal Entrances. There shall be an accessible route from public sidewalks to each ferry terminal entrance clearly marked by appropriate signage. **Deadline: Two Years.**

e.    All ticketing facilities shall be accessible. **Deadline: Two Years.**

**ENFORCEMENT PROVISIONS**

25.    Retention of Jurisdiction. This Consent Decree shall remain in effect until the later of sixty months from its effective date, or until all ferry terminals and vessels have fully complied with the terms of this Consent Decree. The parties agree that the Court shall retain jurisdiction over this Consent Decree for purposes of enforcement, the resolution

of any dispute that may arise under this Consent Decree, and for the entry of any further orders as may be appropriate.

26.     Informal Resolution of Disputes.  Plaintiffs may review compliance with any portion of this Consent Decree at any time upon reasonable notice to the Defendants.  If the Plaintiffs believe that Defendants have not complied with any requirement of this Consent Decree, Plaintiffs shall notify the Defendants in writing and shall first attempt to resolve the issue(s) in good faith.  If the Plaintiffs are unable to reach a satisfactory resolution of the issue(s) raised within ninety days of the date Plaintiffs provide notice to the Defendants, Plaintiffs may elect to seek enforcement and/or injunctive relief by judicial intervention

27.     Injunctive Relief.  In the event the barrier removal, alterations and modifications required hereby are not timely completed in all respects, Plaintiffs shall be entitled to obtain injunctive relief as requested in the Complaint filed in this action.

28.     Plaintiffs shall be entitled to their reasonable attorneys' fees, expert's fees, costs and litigation expenses in connection with their efforts to enforce this Consent Decree including actions taken by Plaintiffs to informally resolve disputes, as well as matters submitted to the Court by the Defendants.  The determination of Plaintiff's entitlement to fees and costs shall be made in accordance with the provisions of ADA §505, 42 U.S.C. §12205, the Federal Rules of Civil Procedure, and/or any other pertinent Federal statutory or regulatory provision.

29.     Waiver.  Failure by the Plaintiffs to enforce any individual provision, requirement or deadline delineated within this Consent Decree shall not be construed as a waiver of Plaintiffs' right to enforce any other provision, requirement or deadline of this Consent

Decree.

## RIGHT OF INSPECTION

30. **Project Completion and Interim Status Reports from the Defendants**.  Within twenty days after each three month anniversary of the Consent Decree, the Defendants shall provide Plaintiffs with an Interim Status Report (ISR), and shall afford the Plaintiffs' representatives reasonable access to Defendants facilities to verify completion of the work required hereby, or to inspect the work's progress and/or compliance with this Consent Decree and applicable accessibility standards.  The purpose of the ISR is to allow Plaintiffs to monitor the Defendants' compliance with the Consent Decree.  Each report shall be signed and acknowledged before a notary public by an employee, agent, or other representative of the Defendants, who shall certify under penalties of perjury that the information contained therein is true and correct.  Each ISR shall identify every barrier removal project required under the Consent Decree which the Defendants have completed, and shall list all items which have not been completed and whose deadline for completion has passed.

31. All reports required by this Consent Decree shall be accompanied by supporting documentation, such as photographs, design drawings, published notices, copies of policies implemented by the Defendants, and such other items so that Plaintiffs may make a determination, without reference to any other material, as to the Defendants' compliance with the Consent Decree.  All reports and supporting materials shall be provided to Plaintiffs in Adobe Acrobat PDF.  If in addition, the material was generated in another format such as excel, word, etc., the material shall also be provided in its original format.

32.     Plaintiffs shall be entitled to reasonable attorneys' fees and expert fees in connection with their review of Defendants' reports required under this Consent Decree.

33.     Plaintiffs' Inspections.  Plaintiffs experts may inspect the work required by this Consent Decree and prepare a written report on a yearly basis of any violations of this Consent Decree and any corrections that Plaintiffs believe are required.  Plaintiffs shall be entitled to expert fees in connection with these yearly inspections and reports, in an amount to be determined by the Court on motion by plaintiffs.  Defendants may oppose the motion, as provided by the local rules.  If any fees are approved by the Court, Defendants are to pay all invoices for expert fees within sixty (60) days of the notification of the court order.

34.     Final Compliance Report: The ISR for the period ending ninety days before the five year anniversary of this Consent Decree shall provide detail as to the status of all projects remaining to be completed under this Consent Decree.

35.     Retention of Records.  The Defendants shall retain during the life of this Consent Decree records required by this Consent Decree, and any other records necessary to document the implementation of and continued compliance with this Consent Decree. The Defendants shall allow counsel for the Plaintiffs to review and copy such records upon reasonable notice.

### ATTORNEY'S FEES, EXPERT FEES, LITIGATION EXPENSES AND COSTS

36.     Plaintiffs are entitled to their reasonable attorney's fees, experts' fees, and litigation costs which have accrued as of the effective date of this Consent Decree, in an amount to be determined by the Court on Motion by the Plaintiffs.  Defendants may oppose the Motion as provided by the local rules.  The Order as to Plaintiffs' attorneys fees and costs shall

be final and part of this Consent Decree, not subject to appellate review, and shall be reduced to final judgment.

## RELEASE OF CLAIMS

37. Plaintiffs hereby release Defendants from the claims asserted in the above-captioned action. This release shall in no way limit Plaintiffs' ability to monitor and enforce Defendants' compliance with the terms of this Consent Decree.

## NON-RETALIATION

38. The Defendants are required by law and they agree that they will not discriminate or retaliate against any person because of his/her participation in this matter.

## MODIFICATION

39. This Consent Decree may not be modified except by order of this Court. If at any time the Defendants desire to modify any portion of this Consent Decree because of changed conditions making performance impossible or impractical or for any other reason, they will promptly notify the Plaintiff in writing, setting forth the facts and circumstances thought to justify modification and the substance of the proposed modification. The Parties shall use their best efforts to reach an agreement and submit to the court a stipulation for modification of Consent Decree. If the parties are unable to agree, the Defendants may file a motion for modification, giving notice to Plaintiffs pursuant to the Federal Rules of Civil Procedure. Plaintiffs shall be entitled to their reasonable attorney's fees, experts' fees, and litigation costs in connection with any requests by Defendants to modify this agreement.

## ENTIRE UNDERSTANDING

40. This Consent Decree constitutes the entire understanding and agreement of the parties

and supersedes all prior or contemporaneous negotiations or agreements (written or oral) and cannot be modified, amended or revoked except by the express written consent of all parties. This Consent Decree does not purport to remedy any potential violations of the ADA, Rehabilitation Act, or any other federal law not specifically set forth herein. This Consent Decree does not affect the Defendants' continuing responsibility to comply with all applicable requirements of the ADA, Rehabilitation Act, or any other federal law.

## SEVERABILITY

41.    If any provision of this Consent Decree or any part of any provision of this Consent Decree is found to be invalid by a court of competent jurisdiction, such shall not affect the validity of any other provision/s or part/s of this Consent Decree.

## CONSTRUCTION/ AMBIGUITIES

42.    The parties acknowledge that each party has reviewed and revised this Consent Decree and that the normal rule of construction, to the effect that any ambiguities are to be resolved against the drafting party, shall not be employed in its interpretation.

## COMPUTATION OF TIME

43.    In computing any period of time proscribed or allowed herein, such computation shall be made consistent with the Federal Rules of Civil Procedure, unless otherwise expressly stated.

## EXECUTION

44.    The parties have read and understood this Consent Decree, have had the opportunity to discuss same with legal counsel, and have voluntarily agreed to sign the Consent Decree and to be bound by its terms.

45.    Each person executing this Consent Decree on each party's behalf represents that they

are duly authorized to sign on behalf of the respective party and to bind each to the terms of this Consent Decree.

IN WITNESS WHEREOF, the parties hereto execute this Consent Decree regarding the removal of program access barriers to government programs, facilities, services and activities, ADA title II compliance, Rehabilitation Act Section 504 compliance, and the release of all claims against and between the respective parties, to be effective upon the date the last of the signatories execute this Settlement Consent Decree.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**AS TO THE PLAINTIFFS:**

Dated:    January 31, 2008

_____
Eduardo Umpierre, individually and on behalf of
ADVOCATING DISABILITY RIGHTS, INC.

**s/Lorenzo Palomares, Esq.**
USDC# : 218107
Co-Counsel for Plaintiffs
500 Munoz Rivera, Centro II
Suite 1402
Hato Rey, PR 00918
T. 787.753.7441
F. 787.565.0650
E. ljpalomares@bellsouth.net

**s/William D. Tucker, Esq.**
USDC# : 221012
Co-Counsel for Plaintiffs
PMB 188
1507 Ponce de Leon Avenue
San Juan, Puerto Rico 00909
T. 877-452-4501
F. 877-452-4507
E. wdtucker@fdn.com

**AS TO THE DEFENDANTS:**

Dated: _25/1/08_

THE PUERTO RICO PORTS AUTHORITY a
public corporation created by law of the
Commonwealth of Puerto Rico

Dated: _25/1/08_

THE MARITIME TRANSPORTATION
AUTHORITY OF PUERTO RICO AND THE
MUNICIPAL ISLANDS, a public corporation
created by law of the Commonwealth of Puerto Rico

By: _Magda Aguiar_

Magda Aguiar, Esq., General Legal Counsel

By: _____

Enzio Ramirez, Esq., General Legal Counsel

Dated: _25/1/08_



s/Pedro E. Ruiz Melendez, Esq.
USDC-PR No. 208311
E.   pruiz@ruizlawoffices.com

s/Edelmiro Salas Gonzalez, Esq.
USDC-PR No. 218004
E.   esalas@coqui.net; edelmirosalas@hotmail.com
Attorneys for Defendants
PO Box 190879
San Juan, Puerto Rico 00919-0879
Tel. 787.622.6232
Facsimile:  787.622.6230

# INDEX TO EXHIBITS

**EXHIBIT A - Summary of Consent Decree Deadlines**

**EXHIBIT B - Required Modifications to Ferry Vessels**
    B-1  Required Modifications to M.S. Atlantis
    B-2  Required Modifications to M.S. Cayo Norte
    B-3  Required Modifications to M.S. Culebra II
    B-4  Required Modifications to M.S. Fajardo II
    B-5  Required Modifications to M.S. Isleño
    B-7  Required Modifications to M.S. Viejo San Juan
    B-8  Required Modifications to M.S. Vieques II

**EXHIBIT C - Required Modifications to Ferry Terminals**
    C-1    Agreement between experts as to ferry terminals, dated 7/5/2007
    C-2    Ferry Terminal Facility Accessible Route Summary Report dated March 10, 2007, supplements report dated 3/4/2007, filed 3/20/2007, as Exhibit to [103], Plaintiffs' Notice #15 of Filing Expert Reports - 3- 10-2007 Supplement to Report on Accessible Routes at Defendants' Ferry Terminals
    C-3    Ferry Terminal Facility Accessible Route Report dated 3/4/2007, filed 3/20/2007, as Exhibit to [102], Plaintiffs' Notice #14 of Filing Expert Reports - Accessible Routes at Defendants' Ferry Terminals
    C-4    Catano Ferry Terminal Accessibility Inspection Report dated February 28, 2007, Exhibit to [96], Plaintiffs' Notice #8 of Filing Expert Reports filed 3/10/2007
    C-5    Culebra Ferry Terminal Accessibility Inspection Report dated February 24, 2007, Exhibit to [97], Plaintiffs' Notice #14 of Filing Expert Reports filed 3/10/2007
    C-6    Fajardo Ferry Terminal Accessibility Inspection Report dated February 23, 2007, Exhibit to [98], Plaintiffs' Notice #10 of Filing Expert Reports filed 3/10/2007
    C-7    Hato Rey Ferry Terminal Accessibility Inspection Report dated February 26, 2007, Exhibit to [99], Plaintiffs' Notice #11 of Filing Expert Reports filed 3/10/2007
    C-8    Old San Juan Ferry Terminal Accessibility Inspection Report dated February 27, 2007, Exhibit to [100], Plaintiffs' Notice #12 of Filing Expert Reports filed 3/10/2007
    C-9    Vieques Ferry Terminal Accessibility Inspection Report dated February 25, 2007, Exhibit to [101], Plaintiffs' Notice #13 of Filing Expert Reports filed 3/10/2007
    C-10  Report of Carlos M. Escobar, P.E. dated June 15, 2007